UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO.

04-20670

FERNANDO MESA VALDERRAMA,

      Plaintiff,

v.

**CIV - KING**

UNITED STATES OF AMERICA,
      Defendant,

_____/

MAGISTRATE JUDGE
O'SULLIVAN

## FERNANDO MESA VALDERRAMA'S MOTION TO SET ASIDE ADMINISTRATIVE FORFEITURE AND MEMORANDUM OF LAW IN SUPPORT THEREOF

Plaintiff, Fernando Mesa Valderrama ("Mesa"), by and through the undersigned counsel, and pursuant to 18 U.S.C. § 983(e), 28 U.S.C. § 1331, the Fourth and Fifth Amendments to the United States Constitution, and the Court's inherent equitable powers, move to set aside the administrative forfeiture of Mesa's property by the Department of Homeland Security's Bureau of Customs and Border Protection ("CBP"), previously the United States Customs Service ("Customs").

### JURISDICTION

This Court has jurisdiction because the property subject to this Motion was seized in the Southern District of Florida.  Further, this Motion and Memorandum results from errors of procedure and the Government's own misconduct.  In re Sixty Seven Thousand Four Hundred Seventy Dollars ($67,470.00), 901 F.2d 1540 (11th Cir. 1990).



## SUMMARY

Mesa is a Colombian resident and citizen who, in 1990, purchased three investment policies (the "Accounts") from Eagle Star International Life ("Eagle Star"). The Accounts were paid for in U.S. dollars, which Mesa obtained in Colombia by exchanging Colombian pesos for U.S. Dollars. Customs evidently believed that the U.S. dollars that Mesa used to pay for the Accounts were drug proceeds. Mesa is uncertain whether Customs believes the U.S. Dollars he received from a money exchanger in Colombia (in exchange for pesos) were drug proceeds or whether Customs believes that the money exchanger he used obtained U.S. dollars that were drug proceeds.[1]

In any event, Customs learned that Mesa desired to withdraw One Hundred Thousand Dollars ($100,000) from the Accounts. Customs then contacted Eagle Star and arranged with them to have a check sent to Mesa through the United States (with tracking information provided to Customs) so that Customs could seize the check without a warrant pursuant to its border search and seizure authority. Customs, in fact, seized the non-endorsed non-negotiable check—without a warrant-- and forfeited it pursuant to a non-judicial forfeiture proceeding.

Mesa recognizing that a non-endorsed check was merely a business record that could be replaced by Eagle Star requested Eagle Star to issue a new check. Eagle Star informed Mesa that it did not feel free to do so by virtue of instructions from Customs. In other words, the Accounts (as well as the check) were constructively seized.

---

[1] The Court will not be asked to resolve that issue because it is only relevant to a defense to or the mitigation of the forfeiture, which are not the subject of this petition.

By this motion, Mesa seeks to have the forfeiture of the check set aside and the constructive seizure of the Accounts removed on the following bases:

a) The non-negotiable check was not subject to administrative forfeiture proceedings as a matter of law.

b) Customs' warrantless seizure of the check violated the Fourth Amendment and applicable statutory authority, notwithstanding Customs' border search and seizure authority, thereby, rendering the forfeiture void *ab initio*;

c) Customs' warrantless constructive seizure of the Accounts violated the Fourth Amendment and applicable statutory authority, thereby, rendering the forfeiture void *ab initio*.

d) Customs failed to serve the statutorily mandated notice that it had seized the Accounts thereby, violating the Fifth Amendment and rendering the forfeiture void *ab initio*.

e) Customs failed to serve the statutorily mandated notice that it had commenced summary administrative forfeiture proceedings, thereby violating the Fifth Amendment and rendering the forfeiture void *ab initio*.

## BACKGROUND

In 1990, Mesa, a Colombian national, began researching different investment and retirement account options.  In or about July 1990, Mesa visited a licensed and registered agent of Eagle Star.  At the time, Eagle Star was promoting and selling investment grade insurance policies to the people of Colombia.  Although the insurance policies were

3

located in the Isle of Man, Eagle Star maintained offices and agents in Bogotá, Colombia. Eagle Star became very successful selling these policies in the Colombian market because of the political and economic situation in Colombia. After visiting the licensed Eagle Star agent in Bogotá, Colombia, Mesa purchased three investment policies (Policy Numbers 9113746, 9113754, and 9113771, collectively referred to herein as the Accounts) with Eagle Star. See Appendix No. 1 for Affidavit of Mesa.

From 1990 through 2002, Mesa contributed annual payments to the Accounts. During the first five years of the Accounts, he made annual payments in the amount of ten thousand dollars ($10,000) for Policy No. 9113746, six thousand dollars ($6,000) for Policy No. 9113754, and two thousand dollars ($2,000) for Policy No. 9113771, totaling an annual investment of eighteen thousand dollars ($18,000). However in 1995, Mesa's businesses in Colombia began to decline with the economy. As a result in 1995, Mesa reduced his total annual investment to ten thousand dollars ($10,000). Id. at Paragraphs 3-4.

By 2002, Mesa's businesses were not as profitable as they had been during the previous decade. Therefore, he decided to withdrawal some of the money that he had invested with Eagle Star. On or about March 19, 2002, Mesa requested a partial withdrawal of one hundred thousand dollars ($100,000) from the Accounts. This was the *first* time in Mesa's twelve-year relationship with Eagle Star that he requested a withdrawal. Id at paragraphs 4-6

On or about April 18, 2002, Eagle Star confirmed that the partial withdrawal was processed and that a check drawn from JP Morgan Chase Manhattan Bank in the amount of one hundred thousand dollars ($100,000) in U.S. Currency would be mailed to Eagle Star's affiliate office in Bogotá, Colombia and then delivered to Mesa. Id at Paragraph 7.

Evidently, during the early part of 2002, the United States government (the "Government"), through Customs, worked with Eagle Star to target possible money launderers utilizing Eagle Star policies.  Upon learning of Mesa's withdrawal request, Customs notified Eagle Star that Mesa was a possible money launderer and *unlawfully* instructed Eagle Star to mail Mesa's check through the United States.  In addition, Customs directed Eagle Star to disclose the shipment's tracking information upon the shipment of Mesa's check.  At the direction of Customs, Eagle Star not only delivered the check to Customs in Miami, but also, constructively froze the remaining money in the Accounts.  Customs did not obtain a warrant or the corresponding letter of rogatory for these seizures.

On April 27, 2002, the package containing Mesa's check arrived in the United States in transit to Bogotá, Colombia.  Customs, using the tracking information that it directed Eagle Star to provide, was waiting for the package and subsequently seized Mesa's check.  Customs seized the check even though it was a non-negotiable instrument.

In early May, when Mesa had not received the check, he contacted Eagle Star. Eagle Star informed Mesa that Customs had seized the check in Miami and they advised him to retain legal counsel.  Therefore, Mesa retained the services of attorney Diego L.

Restrepo ("Restrepo") formerly with the law firm of Shutts & Bowen, LLP in Miami, to represent him against Customs regarding the April 27, 2002 seizure. Id at Paragraphs 8-9.

On or about June 7, 2002, Mesa executed an "Election of Proceedings CAFRA Form AF," requesting that Customs delay forfeiture proceedings and proceed administratively. As such, on June 10, 2002, Restrepo submitted an administrative petition to Customs requesting return of the seized check. See Appendix No. 2 for Affidavit of Restrepo.

Ten months later and one year after the seizure, Restrepo received a telephone call from the Department of Homeland Security, Immigration and Customs Enforcement ("ICE") Special Agent Daniel Flores ("Flores"). ICE agent Flores told Restrepo that he was in charge of the investigation regarding the seizure of Mesa's check. Flores requested a meeting with Mesa and Restrepo. See Restrepo Affidavit at Paragraph No. 4.

Eager to receive his money and answer any questions ICE might have, Mesa flew to Miami to meet with agent Flores and Restrepo that same month. More than a month later, in June 2003, ICE agent Flores contacted Restrepo and offered to settle the case on behalf of the Government. Flores offered to return sixty thousand dollars ($60,000) in exchange for Mesa waiving any claim to the remaining forty thousand dollars ($40,000). Mesa, through Restrepo, agreed to the settlement. Flores told Restrepo that he would prepare the settlement agreement and send it to him. Id. at Paragraph No. 6.

During the remaining part of June and the months of July and August 2003, Restrepo waited to receive the settlement agreement from Flores, however, the agreement was never sent. More than a year after receiving Mesa's petition, on June 30, 2003, CBP sent Restrepo a letter denying his June 10, 2002 petition requesting return of the full

amount of the seized check. Since Restrepo had spoke to, met, and negotiated a settlement with ICE, Restrepo did not recognize the letter from CBP. Id. at Paragraph 8.

On August 7, 2003, CBP sent Restrepo a letter stating that CBP was initiating summary forfeiture proceedings. Again, over the past fourteen months, Restrepo had not dealt with an entity named CBP, and he was still waiting for ICE to send him the agreed upon settlement agreement. Therefore, Restrepo, still relying on his agreement with ICE and agent Flores, disregarded the letter. Restrepo attempted to contact ICE agent Flores in August, however, his attempts were unsuccessful. After 15 months of dealing with Customs, the Department of Homeland Security, ICE, and suddenly a CBP, on or about September 12, 2003, Restrepo, with the approval of Mesa, retained the undersigned counsel. Id. at Paragraph Nos. 9-11.

After immediately contacting CBP's Office of Fines, Penalties & Forfeitures, on September 12, 2003, CBP telephonically notified the undersigned that the check had been administratively forfeited. See Appendix No. 3 for September 18, 2003 letter from CBP. The undersigned then contacted JP Morgan Chase Manhattan Bank (Chase) and requested that a replacement check be issued. Unfortunately, on October 21, 2003, Chase notified the undersigned that they did not have control over the corresponding funds to the Accounts because Customs failed to serve them with a warrant or a protective order. As a result, the corresponding funds never left Mesa's Eagle Star account. Thereby, the undersigned contacted Eagle Star on October 28, 2003, requesting a replacement check. However, on November 25, 2003, Eagle Star informed the undersigned that it did not feel free to release his funds by virtue of instructions from Customs. See Appendix No. 4 for November 25, 2003 letter from Eagle Star.

## ARGUMENT

### I.     THE FORFEITURE WAS VOID *AB INITIO* AS A MATTER OF LAW

#### A. *Customs Lacked Statutory Authority to Administratively Seize and Forfeit Mesa's Check*

Customs had no authority to administratively forfeit Mesa's check. Administrative Forfeitures of non-negotiable checks are not allowed as a matter of law. Section 1607 of Title 19, United States Code, provides law enforcement the authority to administratively seize and forfeit items worth $500,000 or less. However, Section 1607 specifies that monetary instruments may be administratively seized if they are monetary instruments within the meaning of section 5312(a)(3) of title 31. Section 5312(a)(3) defines monetary instruments as "travelers' checks, bearer negotiable instruments, bearer investment securities, stock on which title is passed on delivery, and similar material." 31 U.S.C. 5312(a)(3). Mesa's check is a non-negotiable instrument that does not pass on delivery – it requires endorsement by the payee. Consequently, Mesa's check is not a monetary instrument pursuant to title 31, section 5312(a)(3) and therefore, section 1607 does not afford for administrative forfeiture proceedings. As such, judicial seizure and forfeiture proceedings are the only manner in which Customs can seize and forfeit Mesa's non-negotiable check. Therefore, Customs administrative forfeiture of Mesa's check was procedurally defective and contrary to law.

WHEREFORE, Mesa is entitled to an Order holding:

1) Customs seizure and forfeiture of Mesa's check was improper as a matter of law.
2) The forfeiture of the subject check be set-aside and the corresponding funds be refunded to Mesa with an award of attorney's fees, costs, plus damages for injury to Mesa pursuant to 28 U.S.C. § 2860(c) in an amount to be determined at a subsequent hearing; and,

3)      Mesa is further entitled to an Order directing the United States to inform Eagle Star that the United States has no further interest in the Accounts.

**B.      The Government Violated the Fourth Amendment of the United States Constitution when it Seized Mesa's Check and His Interest in the Accounts Located Outside the United States _without a Warrant_ and in the Absence of Exigent Circumstances or Any Other Exception to the Fourth Amendment's Warrant Requirement.**

Customs improperly targeted both Mesa's check and the Accounts in the Isle of Man.  Customs had no authority to constructively seize Mesa's interest in financial accounts with Eagle Star—accounts located in Isle of Man that belonged to a Colombian citizen.  That seizure was void *ab initio* because Customs violated Mesa's Due Process rights by: a) failing to obtain a warrant as required by the Fourth Amendment and 18 USC § 981(b); and b) failing to provide notice of the constructive seizure as required by 18 USC § 983(a).

Moreover, Customs' orchestration of the mailing of the check through Miami so that Customs could seize it pursuant to its border search authority (without a warrant) and the subsequent seizure of the check was *unreasonable*, and consequently, a violation of the Fourth Amendment.  There were no exigent circumstances present and Customs could have obtained a warrant before the check arrived; thus, the seizure of the check itself was impermissible and the subsequent forfeiture of the check was void *ab initio.*

Because it was void *ab initio* the forfeiture of the check was of no legal effect and cannot deprive this Court of jurisdiction to determine the issues presented. See Cabezudo v. United States, 1998 U.S. Dist. LEXIS 13294 (N.D.IL E.Div. 1998) ("an exception to [the rule once the administrative forfeiture proceedings began, the seized property is deemed "removed" from the district court's jurisdiction] is when property is taken accidentally, fraudulently, or improperly").

9

In the instant case, the forfeited check was seized *improperly;* thus this Court can exercise its equitable jurisdiction and set aside the legal incidents associated with the void forfeiture and return the check to Mesa.

The United States Supreme Court has held "[f]orfeitures are not favored; they should be enforced only when within both the letter and the spirit of the law" *United States v. One Ford Coach*, 307 U.S. 219, 226, 83 L. Ed. 1249, 59 S. Ct. 861 (1939). Despite this sixty-five-year-old command, forfeitures are becoming more frequent in number and more summary in nature. The summary forfeiture of [Mesa's check and the Accounts] was within neither the letter nor the spirit of the law, and [this Court should not] countenance it.  Onwubiko v. United States, 969 F.2d 1392 (2nd Cir. 1992).

**C.     *The Government Failed to Timely Serve Notice of the Seizure of Mesa's Interest in his Eagle Star Accounts.***

18 U.S.C. § 983(a) provides, in relevant part:

(a) Notice; claim; complaint.
   (1) (A) (i) Except as provided in clauses (ii) through (v), in any nonjudicial civil forfeiture proceeding under a civil forfeiture statute, with respect to which the Government is required to send written notice to interested parties, such notice shall be sent in a manner to achieve proper notice as soon as practicable, and in no case more than 60 days after the date of the seizure.
      (ii) …
      (iii) …
      (iv) …
      (v) …
      (B) …
      (C) …
      (D) …
      (E) …
      (F) *If the Government does not send notice of a seizure of property in accordance with subparagraph (A) to the person from whom the property was seized, and no extension of time is granted, the Government shall return the property to that person without prejudice to the right of the Government to commence a forfeiture proceeding at a later time. The Government shall not be required to return contraband or other property that the person from whom the property was seized may not legally possess.*

(Emphasis added).

The Government has not given any notice of the constructive seizure of the Accounts; thus, pursuant to sub-paragraph (F) above, it *shall return the property to [Mesa] without prejudice to the right of the Government to commence a forfeiture proceeding at a later time*.  In <u>Larry Dean Dusenbury v. United States</u>, 534 U.S. 161 (2002), the United States Supreme Court described the extent of the process that is due to defendants who challenge the forfeiture of their property.  The Court held that fundamental tenets of due process require adequate notice, reasonably calculated to provide Mesa with a meaningful opportunity to be heard.  The fundamental requisite of due process is the opportunity to be heard.  See <u>Mullane v. Central Hanover Bank & Trust Co.</u>, 339 U.S. 306 (1950); <u>Grannis v. Ordean</u>, 234 U.S. 385, 394, 34 S. Ct. 779 (1914).

In the instant case, Mesa was only on notice that the Government had seized an unendorsed check (that could be replaced), but he received no notice that the Government had also constructively seized his Accounts with Eagle Star.  Consequently, Mesa was not given the opportunity to be heard.

WHEREFORE Mesa is entitled to have the forfeiture set-aside pursuant to 18 U.S.C. § 983(e) and the check and corresponding funds returned to Mesa plus an Order directing the government to remove the constructive seizure it has placed on the Accounts with Eagle Star.

**D.    The United State's Warrantless Constructive Seizure of Mesa's Check and the Accounts Violated the Fourth Amendment and the Provisions of 18 U.S.C. § 981(b).**

Mesa recognizing that Customs had seized an unendorsed check requested a duplicate check from Eagle Star.  Eagle Star responded with Appendix No. 3, which states in essence that it declined to re-issue the check without instructions from Customs. In other words, Eagle Star did not feel free to re-issue the check; thus Mesa's funds were constructively seized—without notice and without a warrant.

The seizures were a violation of the Fourth Amendment and 18 U.S.C. § 981(b), which provides, in relevant part:

> (1) Except as provided in section 985, any property subject to forfeiture to the United States under subsection (a) may be seized by the Attorney General and, in the case of property involved in a violation investigated by the Secretary of the Treasury or the United States Postal Service, the property may also be seized by the Secretary of the Treasury or the Postal Service, respectively.
>
> (2) *Seizures pursuant to this section shall be made pursuant to a warrant* obtained in the same manner as provided for a search warrant under the Federal Rules of Criminal Procedure, except that a seizure may be made without a warrant if--
>
> (A) a complaint for forfeiture has been filed in the United States district court and the court issued an arrest warrant in rem pursuant to the Supplemental Rules for Certain Admiralty and Maritime Claims;
>
> (B) there is probable cause to believe that the property is subject to forfeiture and--
>
> (i) the seizure is made pursuant to a lawful arrest or search; or
>
> (ii) another exception to the Fourth Amendment warrant requirement would apply; or
>
> (C) the property was lawfully seized by a State or local law enforcement agency and transferred to a Federal agency.
>
> (3) Notwithstanding the provisions of rule 41(a) of the Federal Rules of Criminal Procedure, a seizure warrant may be issued pursuant to this subsection by a judicial officer in any district in which a forfeiture action against the property may be filed under section 1355(b) of title 28, and may be executed in any district in which the property is found, or *transmitted to the central authority of any foreign state for service in accordance with any treaty or other international agreement.* Any motion for the return of property seized under this section shall be filed in

the district court in which the seizure warrant was issued or in the district court for the district in which the property was seized.

(Emphasis added).

In the instant case, the government violated the Fourth Amendment and Section 981 of Title 18 because it seized a check and the corresponding accounts in a foreign jurisdiction without first obtaining a warrant (Fourth Amendment) and then without providing a warrant to the Isle of Man authorities. The government utterly failed to obtain a warrant to be *transmitted to the central authority of any foreign state for service in accordance with any treaty or other international agreement.* Nor were there any exigent circumstances to justify a warrantless seizure. Customs had ample time to obtain a warrant and transmit it *to the central authority of [the Isle of Man]* before the check was sent to Miami where Customs could pretend to be seizing it for the first time pursuant to its border search and seizure authority. The fact is Customs undeniably had already constructively seized the check before it ever left the Isle of Man. This is so because Customs arranged for the check to be delivered through Miami with no contingency of diversion.

The Fourth Amendment's prohibition against <u>unreasonable</u> seizures means what it says and this Court should not countenance deliberate and unnecessary subterfuges by the government to avoid the statutory and constitutional requirements for a warrant in the absence of exigent circumstances.

WHEREFORE Mesa is entitled to an Order holding:

a) The seizure of the subject check as well as Mesa's Eagle Star accounts violated the Fourth and Fifth Amendments to the United States Constitution and 18 U.S.C. § 981 (b);

b) The forfeiture of the subject check be set-aside and refunded to the Mesa with an award of attorney's fees costs, plus damages for injury to the Mesa

pursuant to 28 U.S.C. § 2860(c) in an amount to be determined at a subsequent hearing; and,

c)  Mesa is further entitled to an Order directing the United States to inform Eagle Star that the United States has no further interest in Mesa's accounts.

**E.     *Mesa Received Inadequate Notice of Customs Intent to Initiate Administrative Forfeiture Proceedings.***

Customs never sent Mesa adequate notice of their denial of his administrative petition.  The touchstone of the notice requirement is reasonableness. Notice must "be reasonably calculated, under all circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." Larry Dean Dusenbury v. United States, 534 U.S. 161 (2002); See also United States v. Gonzalez-Gonzalez, 257 F. 3d 31 (1st Cir. 2001).  Over a full year after Customs seized Mesa's check and the Accounts, an ICE special agent contacted him and explained that ICE was now Customs.  After meeting with ICE and negotiating a settlement with ICE, CBP sent Mesa a letter stating that his petition was denied.  Mesa never responded to CBP because ICE had previously notified him that ICE was Customs. Mesa never knew that the CBP letters were from Customs.  The last communication Mesa had with Customs, was with an ICE agent informing him that ICE equaled Customs.  As such, the Government never afforded Mesa a reasonable chance to request judicial forfeiture proceedings.

WHEREFORE, Mesa is entitled to an Order setting aside the administrative forfeiture and allowing Mesa to present his claim in a judicial forum.

## II.   EQUITABLE RELIEF FROM FORFEITURE IS APPROPRIATE

If the Court does not find that the administrative forfeiture should be set aside as a matter of law, Mesa respectfully requests that the Court exercise its equitable jurisdiction and set aside the forfeiture.  In the Eleventh Circuit, considerations that should guide the discretion of a district court in exercising equitable jurisdiction are: 1) whether the government agents seized the property in callous disregard for the constitutional rights of the petitioner; 2) whether the petitioner has an individual interest in and need for the material he seeks to have returned; 3) whether the petitioner would be irreparably injured by denial of the return of property; and 4) whether the petitioner has an adequate remedy at law.  In re $67,470.00, 901 F.2d 1540 (11th Cir. 1990).  The circumstances surrounding the seizure and forfeiture of Mesa's check and accounts justify this Court exercising its equitable jurisdiction, setting aside the forfeiture, and ordering the return of Mesa's wrongfully seized property.

### A)   *Customs Seized Mesa's Check and the Accounts in Callous Disregard for the Constitutional Rights of Mesa.*

As expressed more fully in Part I above, Customs acted in callous disregard for Mesa's constitutional rights when they: a) seized Mesa's check and the Accounts by directing a foreign company to act on its behalf; b) never obtained a seizure warrant for the check or the Accounts; c) skirted the warrant requirements by unlawfully using its border authority to seize foreign accounts and instruments; d) failed to give notice regarding the constructive seizure of Mesa's accounts; e) unlawfully forfeited Mesa's check administratively instead of referring the case to the Office of the U.S. Attorney for judicial proceedings as required by statute (19 U.S.C. § 1607); and f) failed to give

appropriate notice of their intent to initiate summary administrative forfeiture proceedings.

Moreover, Customs lacked probable cause to seize the check. At the time of the seizure and still today, Customs lacks evidence linking Mesa's check to proceeds of illicit activity. At the time of the seizure, the only evidence that linked Mesa's account to possible money laundering activity was the fact that Mesa is a Colombian citizen.

**B)** *Mesa has an individual interest in and need for the material he seeks to have returned.*

Mesa is the owner of the funds in question. He has invested this money in annual payments. Mesa needs to have the funds returned to him so that he can pay his daily expenditures.

**C)** *Irreparable Harm Would Result if the District Court Does Not Act.*

The Government fraudulently and improperly took Mesa's property. When property is taken accidentally, fraudulently, or improperly, the District Court retains jurisdiction to review a final administrative forfeiture. See Boero v. Drug Enforcement Admin., 111 F.3d 301 (2d Cir. 1997). As explained more fully above, Customs seized Mesa's check and constructively seized his accounts without a warrant and without sending statutorily sufficient notice. Mesa was not given the opportunity to contest neither the forfeiture of the currency corresponding to the seized check nor the constructive seizure of his accounts at Eagle Star.

**D)      *If the Above Requested Relief Is Not Granted, No Adequate Remedy at Law Exists.***

On September 12, 2003, days after CBP administratively forfeited Mesa's check, Mesa requested that his claim be referred to the Office of the United States Attorney for judicial forfeiture proceedings.   CBP denied Mesa's request and advised that the forfeiture was final.   As such, Mesa's only remedy remains in this court's equitable powers.

## CONCLUSION

Customs and Border Protection's seizure and forfeiture of Mesa's check and his accounts are a clear example of an abuse of authority.   Our founding fathers wrote the Fourth and Fifth Amendments to the United States Constitution to "police the police." Law Enforcement must act within the law, themselves.   However, throughout this case, Customs chose to skirt the laws policing them.

Customs unlawfully ordered a foreign company to constructively seize accounts and send a check to their hands.   Customs could have properly seized the Accounts and check by applying for a warrant and then submitting a letter of rogatory to the Isle of Man.   However, they chose to avoid the legal process.   Then, Customs did not send notice regarding the seizure of the Accounts.   Most importantly, Customs chose to administratively forfeit Mesa's check instead of complying with the law and immediately referring the case to the Office of the United States Attorney for judicial proceedings.

The Government cannot be allowed to summarily take people's property.   As Justice Brandeis stated in his dissent in <u>Olmstead v. U.S.</u>, "if the government becomes a

lawbreaker, it breeds contempt for law; it invites every man to become a law onto himself, it invites anarchy." <u>Olmstead v. U.S.</u>, 277 U.S. 438 (1928).

WHEREFORE, Mr. Mesa respectfully requests the Court entering an Order holding:

a)      The forfeiture of the subject check be set-aside and the amount of the check refunded to Mesa with an award of attorney's fees costs, plus damages for injury to Mesa pursuant to 28 U.S.C. § 2860(c) in an amount to be determined at a subsequent hearing;

b)      The seizure of the subject check as well as Mesa's Eagle Star accounts violated the Fourth and Fifth Amendments to the United States Constitution and 18 U.S.C. § 981 (b): and

c)      Mesa is further entitled to an Order directing the United States to inform Eagle Star that the United States has no further interest in Mesa's accounts.

Respectfully Submitted,

**ELLSWORTH ROPPOLO, PA**
404 Washington Avenue
Suite 750
Miami Beach, FL 33139
(305) 535-2559

BY: _____
WILLIAM V. ROPPOLO
Florida Bar No. 182850
Gerson M. Joseph, Co-counsel
Florida Bar 0071366

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO.

FERNANDO MESA VALDERRAMA,

      Plaintiff,

v.

UNITED STATES OF AMERICA,
      Defendant,

_____/

## AFFIDAVIT OF FERNANDO MESA VALDERRAMA

I, Fernando Mesa Valderrama, do hereby declare and state:

1.      I am a Colombian national, residing in Bogota, Colombia.

2.      In 1990, I began researching different investment and retirement account options. In or about July 1990, I visited a licensed and registered agent of Eagle Star International Life ("Eagle Star"). At the time, Eagle Star was promoting and selling investment grade insurance policies to the people of Colombia. Eagle Star's policies were located in the Isle of Man, however, they maintained offices and agents in Bogotá, Colombia. After visiting the licensed Eagle Star agent in Bogotá, Colombia, I purchased three investment policies (Policy Numbers 9113746, 9113754, and 9113771) with Eagle Star.

3.      From 1990 through 2002, I contributed annual payments to each one of his three investment accounts. During the first five years of the policies, I made annual payments in the amount of ten thousand dollars ($10,000) for Policy No. 9113746, six thousand dollars ($6,000) for Policy No. 9113754, and two thousand dollars ($2,000) for Policy No. 9113771, totaling an annual investment of eighteen thousand dollars ($18,000).



EXHIBIT

tabbies

4.      In 1995, my businesses in Colombia began to decline with the economy.  As a result in 1995, I reduced my total annual investment to ten thousand dollars ($10,000).

5.      By 2002, my businesses were not as profitable as they had been during the previous decade.  Therefore, I decided to withdrawal some of the money that I had invested with Eagle Star.

6.      On or about March 19, 2002, I requested a partial withdrawal of one hundred thousand dollars from my Eagle Star investments.  This was the first time in my twelve-year relationship with Eagle Star that I requested a withdrawal.

7.      On or about April 18, 2002, Eagle Star confirmed to me that the partial withdrawal was processed and that a check drawn from JP Morgan Chase Manhattan Bank in the amount of one hundred thousand dollars ($100,000) in U.S. Currency would be mailed to Eagle Star's affiliate office in Bogotá, Colombia and then delivered to me.

8.      In early May 2002, I had not received the check from Eagle Star.  Therefore, I contacted Eagle Star.  Eagle Star informed me that Customs had seized my check in Miami and Eagle Star advised me to retain legal counsel.

9.      Therefore, I retained the services of attorney Diego L. Restrepo ("Restrepo") with the law firm of Shutts & Bowen, LLP to represent me against Customs regarding the April 27, 2002 seizure.

10.     In or about May 2003, I flew up to Miami from Colombia to meet with my attorney Diego L. Restrepo and Department of Homeland Security Immigration and Customs Enforcement ("ICE") Special Agent Daniel Flores.

11.     On or about September 12, 2004, I, through my attorney Diego L. Restrepo, retained Mr. William V. Roppolo to take over my representation with regards to the seizure.

I declare under penalty of perjury, under the laws of the United States of America, that the foregoing is true and correct.

_____
Fernando Mesa Valderrama

_____
Date Executed   MARCH 9/04

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO.

FERNANDO MESA VALDERRAMA,

       Plaintiff,

v.

UNITED STATES OF AMERICA,
       Defendant,

_____/

### AFFIDAVIT OF DIEGO L. RESTREPO

     I, Diego L. Restrepo with the Law Offices of Diego L. Restrepo, am a lawyer licensed to practice within the State of Florida, do hereby declare and state:

1.     On or about May 10, 2002, I was retained by Mr. Fernando Mesa Valderrama ("Mesa") to represent him regarding Customs' April 27, 2002 seizure of his check from Eagle Star International Life ("Eagle Star").

2.     On or about June 7, 2002, Mesa executed an "Election of Proceedings CAFRA Form AF," requesting that Customs delay forfeiture proceedings and proceed administratively.

3.     As such, on June 10, 2002, I submitted an administrative petition to Customs requesting return of the seized check.

4.     Ten months later and one year after the seizure, I received a telephone call from the Department of Homeland Security, Immigration and Customs Enforcement ("ICE") Special Agent Daniel Flores ("Flores"). ICE Agent Flores told me that he was in charge



EXHIBIT
2

of the investigation regarding the seizure of Mesa's check.  Flores requested a meeting with Mr. Mesa and I.

5.      In or about May 2003, Mr. Mesa and I met with Agent Flores.

6.      In or about June 2003, ICE agent Flores contacted me and offered to settle the case on behalf of the Government.  Flores offered to return sixty thousand dollars ($60,000) in exchange for Mesa waiving any claim to the remaining forty thousand dollars ($40,000).  After consulting with Mr. Mesa, I contacted  ICE agent Flores and agreed to the settlement.  Flores then told me that he would prepare the settlement agreement and send it to me.

7.      During the remaining part of June and the months of July and August 2003, I waited to receive the settlement agreement from Flores, however, the agreement was never sent.

8.      In early July 2003, I received a letter from U.S. Customs and Border Protection (CBP).  I had never previously dealt with CBP.  Since I had spoke to, met, and negotiated a settlement with ICE, I did not recognize the letter from CBP.

9.      In or about mid August 2003, I received another letter from CBP.  At the time, I was still waiting for ICE to send me the agreed upon settlement agreement.  Not recognizing CBP, I disregarded the letter.

10.     In or about mid August, I attempted to contact ICE agent Flores, however, my attempts were unsuccessful.

11.     After 15 months of dealing with Customs, the Department of Homeland Security, ICE, and suddenly a CBP, on or about September 12, 2003, I, with the approval of Mesa,

2

retained Mr. William V. Roppolo to take over the representation of Mesa with regards to the seizure.

I declare under penalty of perjury, under the laws of the United States of America, that the foregoing is true and correct.

Diego L. Restrepo
Legal Representative for Fernando
Mesa Valderrama

03-15-04
Date Executed

3

# U.S. CUSTOMS AND BORDER PROTECTION
# Department of Homeland Security

*Post Office Box 52-2207, Miami, FL 33152-2207*

SEP 18 2003

ENF-4-PD:A:FPF nf
02-5272-100018

William V. Roppolo, Esquire
Ellsworth, Gonzalez & Roppolo
404 Washington Avenue, #750
Miami Beach, Florida   33139

**RE:**   Fernando Mesa
Check for $100,000
Seized on April 27, 2002

Dear Mr. Roppolo:

This is in response to your letter dated September 12, 2003, submitted with regards to the above referenced case.

A review of our record reflects that on June 30, 2003, a decision was rendered by the FP&F Officer to deny relief from forfeiture of the seized funds.  Attorney Diego Restrepo was allowed thirty (30) days to file a supplemental petition on behalf of his client.  Inasmuch as no further correspondence was received, this office initiated administrative forfeiture proceedings.  Consequently, a Notice of Intent to Forfeit was issued on August 7, 2003.  Inasmuch as a claim form was not filed, the funds were forfeited to the Government on September 3, 2003.

Based on this information, no basis is found which would warrant reinstatement of the case.  This matter is considered closed in our records.

Should you require additional information regarding this case, please contact Ms. Nelly Foreiter of Fines & Penalties, at (305) 869-2875.

Sincerely,

Mark F. Edwards
Fines, Penalties &
Forfeitures Officer

*Vigilance*   ★   *Service*   ★   *Integrity*

**EXHIBIT**
3



# CAINS

Advocates, Solicitors & Notaries

| | |
|---|---|
| YOUR REF: | |
| OUR REF: | PBC/lb/5THG9K/1/3 |
| PLEASE RESPOND TO: P B CLUCAS | |

| | |
|---|---|
| TELEPHONE NO.: | +44 1624 638300 |
| FAX NO.: | +44 1624 638333 |
| DIRECT DIAL: | +44 1624 638361 |
| DIRECT EMAIL: | pbc@cains.co.im |

Mr. William V. Roppolo
Ellsworth, Gonzalez & Roppolo, P.A.
404 Washington Avenue
Suite 750
Miami Beach
Florida 33139
United States of America

**By Fax: 001 305 535 2881**

24 November 2003

Dear Mr. Roppolo

**Your Client:  Fernando Mesa Valderrama**

We have been instructed to act for Eagle Star International Life in connection with your letter dated 28 October 2003 regarding your above named client and his policies with our client numbered 9113771, 9113746 and 9113754.

We have noted what you say about the seizure by the U.S. Customs Service of the cheque and your statement that you require our client to issue a replacement cheque in the sum of $100,000.

We have several concerns at this state in relation to your request:-

1.      We understand that the action taken by the U.S. Customs Service to seize the cheque was because it determined that the monetary instrument and the monies it represented are the proceeds of unlawful activity.  In this respect, we enclose herewith a copy letter from the U.S. Customs Service dated 7 May 2002 that clearly sets out the position of the U.S. Customs Service on this point.

2.      Neither ourselves nor our client have seen any evidence of correspondence from the U.S. Customs Service since 7 May 2002 that retracts the statement by the U.S. Customs Service that the cheque or the monies in question are the proceeds of unlawful activity.

3.      What steps the U.S. Customs Service (or any other U.S. Authority) has taken or failed to take is not the crucial issue from our client's stand point.  In this respect you should note that:-

EXHIBIT

4

(i)     our client complied with your client's request for surrender in April 2002;

(ii)    the surrender cheque was made out in favour of Reiger Overseas Inc. as requested;

(iii)   the surrender cheque was sent out under cover of an international courier package that was addressed as per your client's instructions, ie. to Carrera 13A #141-18, Casa 24, Bogota, Colombia;

(iv)   our client has no control over the manner in which the international courier service routed the package to Colombia;

(v)    accordingly, the seizure of the cheque was and remains a matter for your client to take up with the U.S. Customs Service.

4.    We have advised our client that in respect of the actions taken by the U.S. Customs Service, our client remains on notice that the U.S. Customs Service has stated that the cheque and monies are or represent the proceeds of unlawful activity.  This is highly significant under Isle of Man law, as it is illegal for our client, among other mattes, to assist any person in dealing with the proceeds of criminal conduct.

5.    In these circumstances, we have told our client that it cannot issue a replacement cheque at a time when it remains on notice that the U.S. Customs Service state that the cheque represents the proceeds of unlawful activity.  Until this statement is retracted, any replacement cheque would equally represent the proceeds of unlawful activity.

6.    Without prejudice to our comments below, we enquire whether you have approached the U.S. Customs Service, and in particular the Senior Customs Officials in Miami, to enquire as to whether or not the Customs Service are still of the opinion that the cheque and monies represent proceeds of unlawful activity.  It would clearly be of more benefit to you and your client for you to address this issue with the U.S. Customs Service and let us have their views on the matter rather than addressing with us any steps that the U.S. Customs Service may or may not have taken in relation to forfeiture of funds.

7.    Notwithstanding our comments above, we have also noted that your client instructed our client that he acknowledged that provided our client despatched a cheque in the sum of the surrender proceeds in accordance with his instructions, such action would be in full and final settlement and discharge of the surrender claim.  Accordingly, we have also advised our client that it has no obligation to issue a replacement cheque under the terms of the surrender given that it has tendered by despatch the original surrender proceeds by cheque.

Yours faithfully

CAINS



**U.S. Customs Service**
P.O. BOX 52-2207
Miami, FL  33152



MAY  7 2002

**R E G I S T E R E D   M A I L**

ENF-4-PD:A FPF n
02-5272-100018

Jorge Santallana
Calle 9822 64 of 401
Edificio Calle Cien
Bogota, Colombia

Dear Mr. Santallana:

This is to officially notify you that the U.S. Customs Service seized the monetary instrument described below at **Miami, Florida**, on **April 27, 2002**, at **1930** hours:

• one (1) Chase Manhattan Bank check for **$100,000** in U.S. Dollars

The monetary instrument **was seized and is** subject to forfeiture under the provisions of *title 18, United States Code, section 981* for violation of *title 19, United States Code, section 1956* in that the monies are proceeds of unlawful activity.

Our record indicates you **may have an interest in this** property.  This letter will advise you of the **legal options** available to you concerning this seizure.  ***Important documents are enclosed with this letter***.  Please do not ignore them.  These documents are an **Election of Proceedings** form and a **Seized Asset Claim** form.  You **MUST** check *BOX 1* or *3* and return the Election of Proceedings form if you wish to contest the forfeiture of the seized property.  You may need to complete the *Seized Asset Claim* form depending on how you complete the Election of Proceedings form.

Your legal options are as follows:

1) You may file a petition for relief from forfeiture within **thirty-five (35)** days from the date of this letter.  The provisions of *title 19, United States Code, section 1618* and *title 19, Code of Federal Regulations, part 171*, allow you to do this.  The petition need not be in any specific form, but it should include all the facts which you believe warrant relief from forfeiture and, **in this case, you must supply documentation in support of the legitimate source and intended**

TRADITION

★

SERVICE

★

HONOR

- 2 -

**use of the seized funds**. All petitions should be filed in duplicate, **IN ENGLISH,** and addressed to U.S. Customs Service, FP&F Office, Post Office Box 52-2207, Miami, Florida 33152-2207. If you choose this option, you must check **BOX 1 on the** Election of *Proceedings* form.

2) You may file an offer in compromise within **thirty-five (35)** days from the date of this letter. The provisions of *title 19, United States Code, section 1617* allow you to do this. The offer must specifically indicate that you are submitting your offer under such provisions. If you are offering money in settlement of this case, you must include a cashier's check in the amount of your offer. U.S. Customs may ONLY consider the amount of your offer and will return the full offer if it is rejected. This option may serve to delay the case. If you choose this option, you must check **BOX 1** on the Election of Proceedings form.

3) You may submit an offer to pay the full appraised domestic value of the seized property accompanied by that full payment or an irrevocable letter of credit. The provisions of *title 19, United States Code, section 1614* and *title 19, Code of Federal Regulations, part 162.44* allow you to do this. If U.S. Customs accepts your offer, the property will immediately be released and the payment or letter of credit will be substituted for the seized property. You may still submit a petition or offer in compromise as described above.

4) You may choose to do nothing. If you take no action or if you check **BOX 2** on the Election of Proceedings form, U.S. Customs will seek to forfeit the property. U.S. Customs will immediately commence administrative forfeiture proceedings under the legal authority of *title 19, United States Code, section 1607* and *title 19, Code of Federal Regulations, part 162.* In order to obtain administrative forfeiture, U.S. Customs must publish a notice of seizure and intent to forfeit in the Miami Daily Business Review (or The Miami Herald) after the expiration date of this notice of seizure. You may request that this office publish the first notice sooner.

5) You may abandon the property. If you choose this option, please check **BOX 2** and sign and return the Election of Proceedings form.

6) You may choose to file a claim and have that claim referred to the U.S. Attorney for commencement of a court forfeiture action. If you choose this option, **you must check BOX 3 on the Election of Proceedings form and you must fully complete the enclosed Seized Asset Claim form.** If you choose to file a claim directly in response to this letter, you must do so within **thirty-five (35)** days from the date of this letter.

- 3 -

If you are a holder of a lien or security interest and you do not file a claim, you may avail yourself of any of the other options listed above, but no relief will be granted until after forfeiture unless your petition, offer or request is accompanied by an agreement to hold the United States, its officers and employees harmless, and a release from the registered owner and/or the person from whom the property was seized.

NO MATTER WHICH BOX YOU CHECK ON THE ELECTION OF PROCEEDINGS FORM, YOU MUST ALSO SIGN AND RETURN IT ALONG WITH YOUR PETITION, OFFER, OR CLAIM.  All correspondence must include the above referenced seizure case number (02-5272-100018).

Should you require additional information concerning this matter, please contact Ms. Nelly Foreiter in Fines & Penalties at (305) 869-2875.

Sincerely,

Mark F. Edwards
Fines, Penalties &
Forfeitures Officer

Enclosure

JS 44
(Rev. 12/96)

# CIVIL COVER SHEET

04 - 20670

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS
Fernando MESA Valderrama

## DEFENDANTS
United States of America

CIV - KING

MAGISTRATE JUDGE

(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF  Bogota, Colombia
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT
(IN U.S. PLAINTIFF CASES ONLY)  O'SULLIVAN
NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

Dade  04-20670 CIV-JLK (O'SULLIVAN)

(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)
William V. Roppolo    (305) 535-2529
Ellsworth Roppolo, P.A.
404 Washington Ave, #750, Miami Beach, FL 33139

ATTORNEYS (IF KNOWN)  Office of the United States Attorney
99 N.E. 4th Street
Miami, FL 33132    (305) 961-9000

(d) CIRCLE COUNTY WHERE ACTION AROSE:  DADE,  MONROE,  BROWARD,  PALM BEACH,  MARTIN,  ST. LUCIE,  INDIAN RIVER,  OKEECHOBEE  HIGHLANDS

## II. BASIS OF JURISDICTION (PLACE AN "X" IN ONE BOX ONLY)

☐ 1 U.S. Government Plaintiff
☒ 2 U.S. Government Defendant
☐ 3 Federal Question (U.S. Government Not a Party)
☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN "X" IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. ORIGIN (PLACE AN "X" IN ONE BOX ONLY)
☒ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify)
☐ 6 Multidistrict Litigation
☐ 7 Appeal to District Judge from Magistrate Judgment

## V. NATURE OF SUIT (PLACE AN "X" IN ONE BOX ONLY)

| A CONTRACT | A TORTS | | FORFEITURE/PENALTY | A BANKRUPTCY | A OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | PERSONAL INJURY | PERSONAL INJURY | B☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury – Med Malpractice | B☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury – Product Liability | B☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | B☐ 630 Liquor Laws | A PROPERTY RIGHTS | ☐ 450 Commerce/ICC Rates/etc |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers Liability | | B☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | PERSONAL PROPERTY | B☐ 650 Airline Regs | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| B☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | B☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 810 Selective Service |
| B☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | B☐ 690 Other | B SOCIAL SECURITY | ☐ 850 Securities/Commodities/Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | A LABOR | ☐ 861 HIA (1395ff) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 862 Black Lung (923) | ☐ 891 Agricultural Acts |
| ☐ 195 Contract Product Liability | | | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | ☐ 892 Economic Stabilization Act |
| A REAL PROPERTY | A CIVIL RIGHTS | PRISONER PETITIONS | | ☐ 864 SSID Title XVI | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 441 Voting | B☐ 510 Motions to Vacate Sentence | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act | ☐ 865 RSI (405(g)) | ☐ 894 Energy Allocation Act |
| B☐ 220 Foreclosure | ☐ 442 Employment | HABEAS CORPUS: | ☐ 740 Railway Labor Act | FEDERAL TAX SUITS | ☐ 895 Freedom of Information Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | B☐ 530 General | | A☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 240 Torts to Land | ☐ 444 Welfare | A☐ 535 Death Penalty | ☐ 790 Other Labor Litigation | A☐ 871 IRS – Third Party 26 USC 7609 | ☐ 950 Constitutionality of State Statutes |
| ☐ 245 Tort Product Liability | ☐ 440 Other Civil Rights | B☐ 540 Mandamus & Other | A☐ 791 Empl. Ret. Inc. Security Act | | ☐ 890 Other Statutory Actions |
| ☐ 290 All Other Real Property | | B☐ 550 Civil Rights | | | A OR B |
| | | B☐ 555 Prison Condition | | | |

## VI. CAUSE OF ACTION (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE BRIEF STATEMENT OF CAUSE. DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY)

Pursuant to 18 USC §983, 28 USC §1331, the fourth and fifth Amendment of the U.S. Constitution, and the Court's equitable powers, P. files this Motion to set aside administrative Forfeiture

LENGTH OF TRIAL via ___ days estimated (for both sides to try entire case)

## VII. REQUESTED IN COMPLAINT:
CHECK IF THIS IS A CLASS ACTION ☐ UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:  ☐ YES  ☒ NO

## VIII. RELATED CASE(S) IF ANY (See instructions):
JUDGE ___    DOCKET NUMBER ___

DATE  3-22-04

SIGNATURE OF ATTORNEY OF RECORD  William V. Roppolo

FOR OFFICE USE ONLY

RECEIPT #  098225    AMOUNT $100.00  APPLYING IFP ___  JUDGE ___  MAG. JUDGE ___

3/22/04